# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 24, 2012 Session

## STATE OF TENNESSEE v. HARVEY BRIAN COCHRAN

**Direct Appeal from the Criminal Court for Monroe County**
**No. 10047     Amy A. Reedy, Judge**

---

**No. E2010-02607-CCA-R3-CD - Filed June 19, 2012**

---

A jury convicted the Defendant-Appellant, Harvey Brian Cochran, of reckless homicide, a Class D felony. The trial court sentenced him as a Range I, standard offender to serve three years in the Tennessee Department of Correction. On appeal, Cochran argues that the trial court erred at sentencing by allowing the State to introduce unreliable hearsay as proof of a prior conviction for enhancement purposes, by failing to consider the relevant mitigating factors, and by denying him an alternative sentence. Upon review, we reverse the trial court's denial of an alternative sentence and order Cochran to serve a sentence of split confinement, with ninety days to be served in periodic confinement at the county jail and the remainder of his three-year sentence to be served on supervised probation with the terms of his probation and periodic confinement to be determined by the trial court. In all other respects, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part; Reversed in Part and Remanded**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.[1]

James F. Logan, Jr., Cleveland, Tennessee, for the Defendant-Appellant, Harvey Brian Cochran.

---

[1]This case was originally assigned to our colleague and friend, Judge J.C. McLin. After Judge McLin's untimely death on September 3, 2011, the case was re-assigned. Prior to his death, Judge McLin and his staff had done extensive work on this case. We have utilized much of that work, incorporated it into this opinion, and take this opportunity to acknowledge the faithful service of Judge McLin as a member of this court.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Robert Steven Bebb, District Attorney General; and James Harvey Stutts, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

This case involves the May 26, 2008 stabbing death of Rex Curry at the Notchy Creek Campground in Monroe County, Tennessee. The Monroe County Grand Jury indicted Cochran for first degree premeditated murder.

**Trial**. Lieutenant Detective Travis Jones, of the Monroe County Sheriff's Office, testified that he responded to a stabbing at the Notchy Creek Campground on May 26, 2008. Cochran was sitting in the back of a patrol car when he arrived. Detective Jones ordered a deputy to transport Cochran while he stayed on the scene to interview witnesses and view the crime scene. Detective Jones recovered a knife from a picnic table at Cochran's campsite and clothing from the campsite. He sent these items to the Tennessee Bureau of Investigation (TBI) for testing. Agent Jennifer Shipman of the TBI testified that the items tested positive for the victim's blood.

Detective Jones interviewed Cochran and recorded his statement. The State played the recording for the jury. In this statement, Cochran said he went camping with his son, a woman named Pam Stroehmann and her child, and another woman named Stephanie and Stephanie's children. At some point in the evening, Stroehmann called Cochran's son, who was of mixed race, "the 'N' word." Cochran and Stroehmann argued until two men, who were also staying in the campground, told Cochran to be quiet. Cochran said that these two men "both attacked [him]." He said he was pinned down to the ground for five to six minutes. Cochran said that these men allowed him to get up only after he told them that he would leave the campground. Cochran returned to his campsite, but one of these men, the victim, followed him. Cochran told Detective Jones that he grabbed the knife from the picnic table as the victim approached him. He said that the victim screamed at him and hit him. Cochran said that they both fell to the ground, and the victim jumped up, yelling that he had been cut. According to Cochran's statement, the victim ran away, and Cochran sat down and talked to his son about how he might have to leave for a few days. Cochran also admitted he had been drinking the night of the incident. Detective Jones testified he waited approximately six hours before interviewing Cochran to allow Cochran's blood alcohol level to decrease to .05%.

-2-

Jeffrey Whitehead that testified he and his wife and children went camping at the Notchy Creek Campground during the Memorial Day weekend. Their campsite was next to Cochran's campsite. At approximately 10:00 p.m., Whitehead heard Cochran and a woman arguing. At midnight, Whitehead stepped outside his tent and saw another camper, the victim, talking to Cochran and asking him to be quiet. Whitehead told Cochran he was tired of the noise, and Cochran responded that he would do whatever he wanted to do. At that point, Whitehead said, "I put my hands on [Cochran,] and we went off into the woods and across the path, and ended up in one of the tarps that the victim had around his camping area." The victim asked Whitehead to let him handle it, and the victim held Cochran down. The victim told Cochran to calm down, but Cochran "resisted for a long time[.]" At one point, Cochran said that "if there was a gun there that his son would have it to [the victim's] head." Eventually, Cochran apologized and said he would leave the campground if the victim let him get up. The victim allowed him to stand, and Cochran told Whitehead and the victim "that he had something for [them] and walked back to his campsite." Whitehead said he did not believe the incident was over, so he told his wife to get their children out of the tent. He went to his truck, and he heard Cochran yelling he was not afraid. Then he heard the victim yell, "Call 911, he gigged [sic] me." Whitehead began walking down the pathway back to the campsites and met the victim. The victim had a large wound in his chest and said, "He stabbed me." Whitehead assisted the victim to Whitehead's truck and asked the campground manager to call 9-1-1. He said that Cochran came over to where the victim was lying and told the victim, "'Dude, you are going to be all right,' or 'hang in there,' something to that effect."

Brandlyn Whitehead, Jeffrey Whitehead's wife, corroborated her husband's testimony, but she stated that she did not remember exactly what Cochran said when he walked back to his campsite after the victim let him go. However, she did say that she heard Cochran laugh as he walked back to his tent.

The law enforcement officers who arrested Cochran, Deputy Keela Matoy of the Monroe County Sheriff's Office and Tennessee Trooper Cory Russell, testified that they found Cochran sitting at his campsite when they responded to the 9-1-1 call. They testified that Cochran told them he stabbed the victim.

David Ware, Jr., the corrections officer who processed Cochran on May 26, 2008, testified that Cochran reported he drank alcohol weekly. Ware said that Cochran also informed him that he had drunk one bottle of wine the night of May 26, 2008.

Dr. Darinka Mileusnic-Polchan, a forensic pathologist, testified that she performed the victim's autopsy. She stated that the victim's cause of death was multiple sharp force injuries. Dr. Mileusnic-Polchan said that, in addition to the main wound to his chest, the

victim had two incise wounds on each arm. The main wound to his chest was approximately seven inches deep. She said that the knife entered the victim's chest wall, cut and fractured the fourth and fifth ribs, cut through the left lung, and cut the left ventricle of the heart.

Stephanie Gay Parker testified on Cochran's behalf. She said that she had known Cochran for approximately one year before the incident in this case. She and her children went camping on Memorial Day weekend with Cochran, his son, Cochran's girlfriend Pam Stroehmann, and Stroehmann's daughter. Parker's family stayed in a separate campsite near Cochran's campsite. She stated that she was awakened by an argument between Cochran and Stroehmann. Parker heard Stroehmann say, "You and your little f***ing n***er son." Parker never left her tent, but she heard the altercation between Cochran, the victim, and Whitehead. She said that she heard the victim and Whitehead telling Cochran to quiet down, which was followed by "complete chaos." She then heard "something hit the ground," and Cochran told the men he would calm down. Parker testified that "it finally got quiet for a few minutes," but then she heard the victim say, "I will take you down." A moment later, she heard "a thud," and she knew that a fight was occurring. Parker heard the victim say, "Somebody call 911[;] I'm bleeding, I'm bleeding bad." Parker said that when Stroehmann asked Cochran what he had done, Cochran responded that the victim "came at [him]."

Cochran, the Defendant-Appellant, testified he and Stroehmann had beer, wine, and vodka at their campsite the night of May 26, 2008. At one point, they ran out of beer, and he drove to another county to purchase more. He testified that the argument with Stroehmann began because she wanted him to sleep with her in the tent rather than caring for his son, who was covered with poison ivy, "and then she started calling [his son] a n***er." Cochran said, "I was severely drunk. I mean I don't know a lot of things that happened, you know. I remember flashes of things happening." He recalled hearing voices before he was pinned to the ground by two men. When the men let him get up, Cochran returned to his campsite, but the victim followed him. The victim charged him, and Cochran grabbed the knife from the picnic table. He said the victim yelled, "F**k you and your n****er son." Cochran remembered ending up on the ground on his stomach with the victim on top of him, hitting his head. Then the victim jumped up and said he had been "gigged [sic]." Cochran said that the victim ran away, and he remained at his campsite. He stated he did not remember having any blood on him following the incident. He also said that other people assisted the victim. When asked if he admitted to officers that he stabbed the victim, Cochran said, "I had to have been [the one to tell them what happened because] nobody else [was] around."

On cross-examination, Cochran attributed his "spotty memory" to the amount of alcohol he had drunk that night. He testified he did not remember what he told police

-4-

officers regarding the incident. He also said he did not remember telling Whitehead or the victim that he "had something" for them.

Jason Watson, Michael Madlin, and Teresa McDaniel each testified that Cochran had a good reputation for honesty and truthfulness. Following the close of proof and deliberations, the jury convicted Cochran of the lesser included offense of reckless homicide.

**Sentencing Hearing.** At the sentencing hearing, the court admitted Cochran's presentence report as evidence. Danny Isbill, a parole officer, testified he prepared the presentence report. Isbill said that Cochran reported two prior offenses to him: a public intoxication conviction from Montgomery County, Tennessee, and "a domestic violence situation in Hopkinsville, Kentucky." Isbill confirmed the public intoxication conviction via a National Crime Information Center (NCIC) report, and he called Hopkinsville, Kentucky, to confirm the conviction there. The authorities in Hopkinsville verbally confirmed the conviction, but Isbill was not authorized by the State of Tennessee to request a certified copy of the conviction because of the cost to obtain it. However, the authorities in Hopkinsville sent Isbill a "certified copy . . . of a disposition calendar and print screen of [a] charge and sentence screen[.]"

Cochran objected to the disposition calendar and print screen, arguing that these documents were not certified copies of a conviction. The State responded that it would introduce the documents "as evidence of confirmation of information that [Cochran] personally provided to the probation officer." The trial court overruled Cochran's objection and accepted the documents regarding the Kentucky offense as an exhibit to the sentencing hearing. These documents showed that Cochran was found guilty of the offense of aggravated assault-fourth degree-spouse abuse and that he was given a thirty-day sentence with all but two days suspended and was ordered to pay a fine and to attend domestic violence counseling. The State noted that "Hopkinsville, Kentucky, did not enter [the conviction] into the NCIC [database]." On cross-examination, Isbill said that Cochran informed him that he had stopped drinking alcohol but did not state what, if any, treatment he received.

The victim's father testified that the victim never used profanity and would not have gone into Cochran's campsite without an invitation. He also testified that the victim was very strong and exercised every day.

Cochran's mother testified that Cochran was not a violent person and tried to help everyone as much as he could. She said that Cochran always put his son first. In response to questioning by the court, Cochran's mother said that Cochran had never had a drinking problem but had not drunk any alcohol since the incident.

Cochran testified he no longer drank alcohol. He said he was the sole support for his eleven-year-old son. He also said that he coached football and attended church. Cochran indicated that he was sincerely remorseful and said, "I can't even fathom really even being here today. It's not who I am[;] it's not who I try to represent . . . ."

In response to questioning by the court, Cochran testified he would do anything he could to help the victim's family and said he prayed for comfort for them. He agreed that alcohol was responsible for the incident. He said he did not believe he was an alcoholic because he had stopped drinking alcohol and did not "need it [or] long for it."

At the conclusion of the proof, the trial court found that two enhancement factors applied, namely that Cochran had "a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range," and Cochran "employed a . . . deadly weapon during the commission of the offense." T.C.A. § 40-35-114(1), (9) (2006). The court found that no mitigating factors applied, stating that "this [was] a case where[] the jury considered all of those very things in concluding that he was not guilty of greater offenses, that in fact he was guilty of a reckless homicide." The trial court also determined that the three factors to consider for sentences involving confinement, as outlined in Tennessee Code Annotated section 40-35-103(1), did not apply. The trial court then denied alternative sentencing based on Cochran's lack of truthfulness and remorse as it related to his potential for rehabilitation:

> The thing that does cause the Court great [p]ause about Mr. Cochran in his application for [an] alternative sentence is the factor of his truthfulness, his remorse in this case as well. I'm hearing from Mr. Cochran that he can't believe he's here and he's in this position, and I believe that he can't believe that. And we have heard from Mr. Cochran, "I did it, I stabbed the guy." But that for the Court stops just short of the truth, and the responsibility and the accountability that the Court is looking for to apply [an] alternative sentence to this case. Those things, that responsibility and that remorsefulness are germane to your rehabilitation potential, and to say that you don't have a drinking problem, when everything that this court heard during this trial was that alcohol abuse in this case resulted in the loss of this life, causes the Court concern about your truthfulness and causes the Court to decide that [an] alternative sentence is not appropriate in this case.

As a Range I, standard offender, Cochran was subject to a sentence of two to four years for his reckless homicide conviction. See id. § 40-35-112 (2006). The trial court sentenced Cochran to serve three years in the Tennessee Department of Correction. Cochran

filed a timely motion for new trial, which the trial court denied, and filed a timely notice of appeal.

## ANALYSIS

Cochran argues that the trial court erred in its sentencing. Specifically, he claims that the trial court erred in admitting unreliable hearsay as evidence of a prior conviction for enhancement purposes, erred in failing to consider the mitigating factors, and erred in denying an alternative sentence. The State responds that Cochran waived his argument regarding unreliable hearsay. The State also argues that the trial court considered the mitigating factors before choosing not to apply them and that the court properly denied alternative sentencing. Although we conclude that the trial court did not admit unreliable hearsay and properly considered the mitigating factors before declining to apply them at the sentencing hearing, we agree with Cochran that the trial court erred in denying alternative sentencing.

**I. Domestic Violence Conviction.** Cochran's first argument is that the trial court admitted unreliable hearsay as evidence of Cochran's prior domestic violence conviction in Kentucky, thereby violating the rules of evidence and the Sentencing Act. At the sentencing hearing, Cochran objected to Danny Isbill's testimony regarding the Kentucky conviction because the supporting documents, the printout of the computer screen and the copy of the disposition calendar, were not certified copies of the conviction. The State urges this court to conclude that Cochran waived this issue by objecting to these documents on the ground of hearsay for the first time on appeal. However, based on our review of the record, Cochran sufficiently preserved this issue for appellate review.

Tennessee Code Annotated section 40-35-209(b), which governs the presentation of evidence at a sentencing hearing, states:

> The rules of evidence shall apply, except that reliable hearsay, including, but not limited to, certified copies of convictions or documents, may be admitted if the opposing party is accorded a fair opportunity to rebut any hearsay evidence so admitted . . . .

It is firmly established that information contained within a presentence report is reliable hearsay which may be admitted if the opposing party is given an opportunity to rebut the same. State v. Baker, 956 S.W.2d 8, 17 (Tenn. Crim. App. 1997) (The hearsay contained in a presentence report is "reliable because it is based upon the presentence officer's research of the records, contact with relevant agencies, and the gathering of information which is required to be included in a presentence report."). Moreover, as occurred here, the individual

preparing the presence report may testify at the sentencing hearing. T.C.A. § 40-35-209(b) (2006). Certified copies of convictions are not required to prove a defendant's prior criminal history since the trial court may rely on the presence report and the testimony of the individual who prepared the report. State v. Richardson, 875 S.W.2d 671, 677 (Tenn. Crim. App. 1993).

Here, the record shows that Danny Isbill, the probation officer who prepared the presence report, testified that Cochran initially informed him of the public intoxication conviction and the "domestic violence situation in Hopkinsville, Kentucky." He stated that the appropriate authorities in Hopkinsville, Kentucky verbally confirmed that Cochran had been convicted of the offense of aggravated assault-fourth degree-spouse abuse. Isbill requested and received a certified copy of the disposition calendar and a print screen of the charge and sentence screen from Hopkinsville, Kentucky, which also confirmed Cochran's conviction. During the hearing, Cochran was afforded a fair opportunity to rebut the evidence of his conviction, and he failed to do so. In addition, Cochran never argued that the presence report, the documents, or the testimony of Isbill was inaccurate. We conclude that the trial court properly admitted the presence report, the testimony of Isbill, and the supporting documents for the Kentucky conviction as reliable hearsay. See T.C.A. § 40-35-209(b). Moreover, a certified copy of Cochran's Kentucky conviction was unnecessary to establish this conviction by a preponderance of the evidence for enhancement purposes in light of this other evidence. Richardson, 875 S.W.2d at 677; State v. Jimmy Curtis Adkins, No. E2009-02413-CCA-R3-CD, 2010 WL 5238656, at *9 (Tenn. Crim. App., at Knoxville, Dec. 16, 2010), perm. app. denied, (Tenn. May 25, 2011) (holding that a certified copy of a drug paraphernalia conviction was not required where the preparer of the presence report testified at the sentencing hearing that she obtained computer records reflecting the conviction and the defendant was given a fair opportunity to rebut the evidence of the conviction and failed to do so). Therefore, Cochran is not entitled to relief on this issue.

**II. Sentence.** Cochran also contends that the trial court improperly sentenced him because the trial court failed to consider the relevant mitigating factors and failed to consider the statutory guidelines regarding confinement before denying alternative sentencing. Pursuant to the 2005 amendments to the sentencing statutes, a trial court has broad discretion in determining the length of a defendant's sentence so long as the sentence imposed is within the applicable range of punishment and the trial court follows the sentencing act. State v. Carter, 254 S.W.3d 335, 344 (Tenn. 2008). In order to facilitate appellate review, the trial court must set forth on the record the particular enhancement and mitigation factors it considered and the reasons for the sentence. Id. at 343. The 2005 amendments "deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." Id. at 344. Under the amended sentencing act, a defendant may appeal on the ground that the sentence is excessive under the sentencing considerations as stated in

sections 40-35-103 and 40-35-210 or that the sentence is inconsistent with the purposes and principles of sentencing as stated in sections 40-35-102 and -103. Id. "An appellate court is . . . bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346. "If, however, the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." Id. (citing State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)). Because the trial court properly considered the purposes and principles of the sentencing act, our review is de novo with a presumption of correctness. Id.

The defendant has the burden of showing the impropriety of the sentence. T.C.A. § 40-35-401(d) (2006), Sentencing Comm'n Comments. A trial court, when sentencing a defendant, must consider the following:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;
(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Id. § 40-35-210(b) (2006); see also State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002); State v. Osborne, 251 S.W.3d 1, 24 (Tenn. Crim. App. 2007).

**Sentence Length.** Cochran argues that the trial court failed to consider the mitigating factors he presented at sentencing. However, he acknowledges that the trial court stated on the record that it did not apply any of the argued for mitigating factors based on its belief that the jury considered those factors in convicting him of the lesser included offense of reckless homicide.

At the sentencing hearing, Cochran presented the following mitigating factors: he acted under strong provocation, he assisted authorities in locating evidence, he "committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct," he was remorseful, and he was rehabilitated since he had not consumed alcohol since the incident. T.C.A. § 40-35-113(2), (10), (11), (13). The court declined to apply any of these mitigating factors, stating, "[T]his [was] a case where[] the jury considered all of those very things in concluding that he was not guilty of greater offenses[.]"

Here, Cochran was charged with first degree premeditated murder but was convicted of the significantly lesser offense of reckless homicide, a Class D felony. Reckless homicide is defined as "a reckless killing of another." Id. § 39-13-215(a) (2006). Reckless culpability is defined as follows:

> [A] person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

Id. § 39-11-302(c) (2006). We note that "[a] jury's verdict reflecting that consideration of a potential mitigating factor led to a conviction for a lesser included offense may render that mitigating factor inappropriate for further consideration in sentencing." State v. David Keith Daugherty, No. 03C01-9203-CR-00082, 1993 WL 330454, at *5 (Tenn. Crim. App. Aug. 27, 1993). Upon review, we cannot conclude that the trial court erred in finding that the mitigating factors presented by Cochran were considered by the jury in convicting Cochran of reckless homicide rather than first degree premeditated murder. See id.; see also State v. Robert Lee Collier, No. 01-C-01-9102-CR00048, 1992 WL 92958, at *5 (Tenn. Crim. App., at Nashville, May 7, 1992), perm. app. denied, (Tenn. Aug. 31, 1992) (holding that the trial court did not err in declining to apply the mitigating factor that the defendant acted under strong provocation where the jury convicted the defendant of involuntary manslaughter rather than the charged offense of first degree premeditated murder). Accordingly, Cochran is not entitled to relief on this issue.

**Denial of Alternative Sentence.** Cochran argues that the trial court erred in failing to follow the sentencing guidelines regarding confinement before denying him an alternative sentence. Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). Tennessee Code

Annotated section 40-35-102(6)(A) (2006) states that a defendant who does not require confinement under subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D, or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" However, a trial court "shall consider, but is not bound by, the advisory sentencing guideline" in section 40-35-102(6)(A). T.C.A. § 40-35-102(6)(D) (2006).

We note that the trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). Where a defendant is considered a favorable candidate for alternative sentencing, the State has the burden of presenting evidence to the contrary. State v. Bingham, 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). A trial court should consider the following when determining whether there is "evidence to the contrary" indicating that an individual should not receive alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C) (2006); see also State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). However, the defendant has the burden of establishing suitability for full probation, even if the defendant is considered a favorable candidate for alternative sentencing. Id. (citing T.C.A. § 40-35-303(b)). We agree that Cochran was considered a favorable candidate for alternative sentencing since he was convicted of reckless homicide, a Class D felony.

Cochran was also eligible for probation because his sentence was ten years or less and the offense for which he was sentenced was not specifically excluded by statute. T.C.A. § 40-35-303(a) (2006). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants. Id. § 40-35-303(b). In addition, "the defendant is not automatically entitled to probation as a matter of law." Id. § 40-35-303(b), Sentencing Comm'n Comments. Rather, the defendant must demonstrate that probation would serve the

ends of justice and the best interests of both the public and the defendant. State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citation omitted).

When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, his present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing State v. Grear, 568 S.W.2d 285 (Tenn. 1978)). "The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed[,]" and "[t]he length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence[.]" T.C.A. § 40-35-103(5). In addition, the principles of sentencing require the sentence to be "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. § 40-35-103(2), (4). Moreover, our supreme court has held that truthfulness is a factor which the court may consider in deciding whether to grant or deny probation. State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983) (citing State v. Poe, 614 S.W.2d 403, 404 (Tenn. Crim. App. 1981)).

The trial court specifically stated that the factors regarding confinement as stated in Tennessee Code Annotated section 40-35-103(1)(A)-(C) did not apply in this case. We agree with the court that Cochran did not have "a long history of criminal conduct" pursuant to section 40-35-103(1)(A). Second, we also agree that the circumstances of the offense were not so "violent, horrifying, shocking, reprehensible, [or] offensive" as to require a denial of alternative sentencing based on the seriousness of the offense pursuant to section 40-35-103(1)(B). State v. Bottoms, 87 S.W.3d 95, 103 (Tenn. Crim. App. 2001) (internal quotations and citations omitted); State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991); State v. Travis, 622 S.W.2d 529, 534 (Tenn. 1981); see also State v. Butler, 880 S.W.2d 395, 400-01 (Tenn. Crim. App. 1994) ("[T]he fact that the death of another results from the defendant's conduct does not, alone, make the offense sufficiently violent to justify a denial of probation nor can it be viewed as sufficient evidence to overcome the presumption in T.C.A. § 40-35-102(6)."). Moreover, a review of the record shows that no proof was presented at the sentencing hearing regarding the need to deter others from committing similar offenses pursuant to section 40-35-103(1)(B). State v. Nunley, 22 S.W.3d 282, 286 (Tenn. Crim. App. 1999) (holding that in order to use deterrence as a justification for confinement, evidence must be presented indicating some special need for deterrence in that jurisdiction). Third, there was no proof that "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully" to Cochran pursuant to section 40-35-103(1)(C).

The trial court, while acknowledging that none of the factors regarding confinement as stated in code section 40-35-103(1)(A)-(C) applied in this case, denied alternative sentencing based solely on Cochran's lack of remorse and untruthfulness as it related to his potential for rehabilitation pursuant to section 40-35-103(5). As previously stated, a defendant's potential for rehabilitation "should be considered in determining <u>the sentence alternative or length of a term to be imposed.</u>" T.C.A. § 40-35-103(5) (emphasis added). Additionally, a defendant's potential for rehabilitation pursuant to this section becomes a factor for consideration only after the trial court has determined that a sentence of total confinement is improper. <u>See</u> <u>State v. Dowdy</u>, 894 S.W.2d 301, 305 (Tenn. 1994). Specifically, the trial court opined that Cochran showed a lack of remorse and a lack of candor because Cochran could not believe that he had been convicted of killing a man and because he denied that he had a problem with alcohol when alcohol abuse played a large role in the victim's death.

We acknowledge that a lack of candor and credibility is a factor which the court may consider in assessing a defendant's potential for rehabilitation. <u>Bunch</u>, 646 S.W.2d at 160; <u>State v. Zeolia</u>, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996). We further observe that the trial judge is in the best position to assess a defendant's credibility and potential for rehabilitation. However, the trial court's findings that Cochran exhibited a lack of remorse and a lack of candor are simply not supported by the record in this case. Because the trial court's findings do not constitute "evidence to the contrary," Cochran maintains his status as a favorable candidate for alternative sentencing. Accordingly, we conclude that the trial court erred in denying alternative sentencing in this case. We reverse the trial court's judgment denying an alternative sentence and order that Cochran serve a sentence of split confinement, with ninety days to be served in periodic confinement in the county jail and the remainder of his three-year sentence to be served on supervised probation with the terms of his probation and periodic confinement to be determined by the trial court.

## CONCLUSION

Upon review, we conclude that a sentence of split confinement is appropriate. Accordingly, we reverse and remand the matter for entry of a judgment ordering that the defendant serve ninety days in the county jail, with the remainder of his three-year sentence to be served on supervised probation with the terms and conditions of his probation to be determined by the trial court. In all other respects, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE